THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com

*Firm email for service of process:*
admin@the-plf.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brandon Banuelos, Austin Barbini, Maya Ramos, and Garrett Thomas,<br><br>Plaintiffs,<br><br>v.<br><br>City of Phoenix, a municipal corporation,<br><br>Jeri Williams, Chief of Police of the City of Phoenix Police Department,<br><br>Defendants. | Case No.<br><br>**CIVIL RIGHTS COMPLAINT (42 U.S.C. § 1983)**<br><br>(JURY TRIAL DEMANDED) |

For their Complaint against Defendants City of Phoenix and its Chief of Police, Jeri Williams, Plaintiffs Brandon Banuelos, Austin Barbini, Maya Ramos, and Garrett Thomas, through undersigned counsel, hereby allege as follows:

## **PARTIES**

1. Plaintiff Brandon Banuelos is man residing in Maricopa County, Arizona.

2. Plaintiff Austin Barbini is a man residing in Maricopa County, Arizona.

3. Maya Ramos is a woman residing in Maricopa County, Arizona.

4. Garrett Thomas is a man residing in Maricopa County, Arizona.

5. Defendant Jeri Williams ("Chief Williams") is a married woman residing in Maricopa County, Arizona. Chief Williams is the acting Chief of Police at the City of Phoenix Police Department.

6. Defendant City of Phoenix (the "City") is a municipal corporation created under the laws of the State of Arizona. The City is under a duty to run its law enforcement activities in a lawful manner to preserve the peace and to preserve for its citizens the rights, privileges, and immunities guaranteed and secured to them by the Constitutions and laws of the United States and the State of Arizona.

7. The City has established or delegated to its law enforcement agency the responsibility for establishing and implementing policies, practices, procedures and/or customs used by law enforcement officers employed by the City regarding the investigation, detention, arrest, and public relations during law enforcement operations.

8. Every act and omission of the employees, representatives, and agents of the Defendants detailed in this Complaint was performed under the color and pretense of the Constitutions, statutes, ordinances, regulations, customs, and uses of the United States of America, the State of Arizona, and the City of Phoenix, by their authority as sworn officers, and within the course and scope of their employment.

9. Upon information and belief, there are currently unknown City of Phoenix employees who caused or contributed to Plaintiffs' injuries. The identity and roles of these individuals are uniquely within the possession of the City of Phoenix, and Plaintiffs will amend this complaint to add such responsible individuals upon discovery of their identities.

10. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3)(4) and 1367(a). This Court has jurisdiction over Plaintiff's claims for violation of Plaintiff's civil rights under 42 U.S.C. § 1983.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions that give rise to this action occurred within this District and this Court otherwise

has jurisdiction.

12. This case presents an actual case in controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution, and under the provisions of 42 U.S.C. §§ 1983 and 1988.

**JURISDICTION AND VENUE**

13. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3)(4) and 1367(a). This Court has jurisdiction over Plaintiffs' claims for violation of their civil rights under 42 U.S.C. § 1983, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions that give rise to this action occurred within this District within the appropriate statutes of limitations, and this Court otherwise has jurisdiction.

15. This case presents an actual case in controversy arising under the Fourth, and Fourteenth Amendments to the United States Constitution, and under the provisions of 42 U.S.C. §§ 1983 and 1988.

**GENERAL ALLEGATIONS**

Background of the Dion Johnson / George Floyd Protests

16. On the morning of May 25, 2020, with the country gripped in a global pandemic that was disproportionately impacting and killing black, indigenous, and people of color, a 28-year-old black father named Dion Johnson was asleep behind the wheel of his immobilized vehicle on the Loop 101. A DPS motor officer radioed in that Mr. Johnson was severely intoxicated and non-responsive. Minutes later, apparently without radioing for back-up, the Trooper shot and killed Mr. Johnson.

17. Before the community even had a chance to absorb the news, the earth shook: Social media began the viral circulation of a gruesome video depicting a white Minneapolis police officer kneeling on the neck of a handcuffed black father of two named George Floyd.

During the 8 minutes and 46 seconds that the officer knelt on George Floyd's neck, he stared blankly at witnesses and ignored their pleas to stop while three other officers stood by and provided protection to make sure that the crowd could not interfere with the ongoing murder of Mr. Floyd. In the following days, protestors took to the streets to demonstrate in Minneapolis and other American cities.

18. On Thursday, May 28, 2020, peaceful protestors gathered in downtown Phoenix. After several hours, Phoenix Police declared the protest "unlawful" and began shooting the protestors with tear gas and rubber bullets to disburse the crowd. Despite being subject to the deployment of chemical weapons banned for warfare by the Geneva Conventions,[1] no violence was threatened, no participants injured any police offices and all but eight (8) people voluntarily and peacefully left the area. Those eight people were arrested and charged with misdemeanor unlawful assembly.[2]

19. On Friday, May 29, 2020, protestors returned to downtown Phoenix. Again, the protests carried on peacefully for hours. This night there was some destruction to property, although no protest participants or police were injured. Nonetheless, Phoenix Police declared an unlawful assembly and again began shooting tear gas and rubber bullets in an attempt to disburse the protests.

20. On the morning of Saturday, May 30, 2020, Phoenix Mayor Kate Gallego and Police Chief Jeri Williams held a press conference at which they announced that the protests the night before were largely peaceful; that there was a "small" group of protestors who had caused damaged; and that the actions of a "few" had resulted in widespread property

---

[1] https://www.usatoday.com/story/news/factcheck/2020/06/06/fact-check-its-true-tear-gas-chemical-weapon-banned-war/3156448001/

[2] https://www.abc15.com/news/national/rally-underway-in-phoenix-over-the-in-custody-death-of-george-floyd-in-minneapolis

1 damage in the hundreds of thousands of dollars.[3] Phoenix PD made two arrests that night.[4]

22. That evening, protestors again returned to downtown Phoenix. History repeated itself for the third consecutive night: Largely peaceful protests were declared unlawful without and followed by mass deployments of tear gas. This night, however, Phoenix Police decided to change their tactics: Rather than permitting the protestors to disburse, they chased them down. Police rounded up and arrested 114 people; detained them for hours in vans and precincts; and eventually booked them into the county jail for the same exact charge (felony rioting). In support of each of these arrests, Phoenix Police "copied-and-pasted" the same generic probable cause statement – one that, in every case, was constitutionally deficient by the Maricopa County Superior Court.

22. The next morning, Sunday, May 31, 2020, Phoenix PD announced that it had arrested 114 people in downtown Phoenix for "rioting." Later that day, citing days of unrest in the City of Phoenix, Arizona Governor Doug Ducey issued an emergency order declaring a "State of Emergency" imposing a curfew beginning at 8 p.m. on May 31, 2020 on all residents, statewide. Significantly, the emergency order made no exception for exercise of First Amendment Rights.

Plaintiffs' Respective Participation in Lawful First Amendment Assembly

23. On the evening of May 31, 2020, Plaintiffs Brandon Banuelos, Austin Barbini, Mayo Ramos, and Garrett Thomas (collectively, "Plaintiffs") were among thousands of Arizonans who traveled to downtown Phoenix to participate in and/or document the fourth consecutive night of protests.

24. Plaintiffs individually and separately joined groups of entirely peaceful protestors – the vast majority of whom were college-aged young people of all races,

---

[3] https://www.facebook.com/watch/?v=752671345475649

[4] https://www.abc15.com/news/region-phoenix-metro/central-phoenix/watch-rallies-continue-friday-night-in-phoenix-over-deaths-of-dion-johnson-and-george-floyd

- 5 -

ethnicities, and backgrounds – who initially assembled in downtown Phoenix near the Phoenix Police Department's downtown headquarters.

26. As it neared 8pm, word began circulating that police would be closing freeway access to and from downtown Phoenix – causing many attendees to return to their vehicles to ensure that they could get home that evening.

26. Hundreds of protest attendees remained behind, intent on exercising their First Amendment right to assemble in the face of what they (and many constitutional scholars) believed to be an unconstitutional curfew.

27. The protest participants began walking as a group, first east to 7th Street before eventually turning north.

28. The group walked north on 7th Street, crossing Van Buren and approaching Roosevelt Street. As the group moved north, Phoenix Police encircled the group on multiple sides, indiscriminately shooting them with tear gas and rubber bullets.

29. Plaintiffs were among large groups of protestors who were "funneled and hunted" by Phoenix Police officers, who deliberately pushed protestors into small areas where tactical take-down teams hunted them through downtown Phoenix's streets, shot them with tear gas and rubber bullets, and ultimately arrested them.

30. Plaintiffs, each and all of them, were ultimately arrested for violating an emergency order, a misdemeanor under Arizona law; detained in handcuffs for lengthy periods of time; and ultimately booked into the Maricopa County jail where they spent the night.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 –Unlawful Retaliation in Violation of the First Amendment**
**(Against all Defendants and Officers to be Named)**

31. All other paragraphs of this lawsuit are incorporated.

32. 42 U.S.C section 1983 provides, in relevant part, as follows:

> Every person, who under color of any statute, ordinance,

> regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

42 U.S.C. § 1983.

33. Plaintiffs are citizens or residents of the United States with the rights to redress under section 1983.

34. Defendants Jeri Williams and the unknown officers (collectively, the "PPD Defendants") involved in the excessive use of force against Plaintiffs are "persons" as that term is defined by 42 U.S.C. § 1983.

35. The PPD Defendants were, at all times relevant hereto, acting under the color of law in their capacities as the City of Phoenix Police Department employees; their acts and omissions, were conducted within the scope of their official duties or employment.

36. The PPD Defendants, as the decision-makers for both PPD and the Tactical Response Unit (the PPD unit that responded to the May 31, 2020 protests) undoubtedly were aware of and authorized the PPD officers' use of force at the protests on May 31, 2020. They also were aware of and authorized PPD officers' plan to trap, hunt, indiscriminately deploy less-lethal munitions against, and arrest all actual and perceived protesters in the downtown Phoenix area

37. The PPD Defendants and currently unknown officers deprived Plaintiffs of the right to protest peacefully. The PPD Defendants and currently unknown officers have done so through, among other things, the excessive use of force, unwarranted seizures and detentions, including unlawfully arresting individuals, and holding them in hot vans for hours without access to water or a restroom.

38. PPD's past history and subsequent similar misconduct indicates that such conduct is intentional and the PPD Defendants and/or currently unknown officers were

motivated, in part, by the desire to silence and disrupt Plaintiffs' actual or perceived protected anti-police-violence views.

39. This unlawful behavior has prevented, deterred, or chilled Plaintiffs' willingness to exercise their First Amendment right entitling Plaintiffs to compensatory, economic, consequential and special damages in an amount to be determined at trial.

40. Plaintiffs are further entitled to his attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

41. Finally, in addition to compensatory, economic, consequential and special damages, Plaintiffs are entitled to punitive damages against Defendants under 42 U.S.C. § 1983, in that the actions of the Defendants and/or currently unknown officers were taken maliciously, willfully, or with a reckless disregard of Plaintiffs' constitutional rights. Such damages would have to be determined individually, following establishing liability through this class action.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Excessive Force in Violation of the Fourth Amendment**
**(Against all Defendants and Officers To Be Named)**

42. All other paragraphs of this lawsuit are incorporated.

43. 42 U.S.C section 1983 provides, in relevant part, as follows:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

42 U.S.C. § 1983.

44. Plaintiffs are citizens or residents of the United States with the rights to redress under section 1983.

45. The PPD Defendants and the currently unknown officers involved in the excessive use of force against Plaintiffs are "persons" as that term is defined by 42 U.S.C. § 1983.

46. The PPD Defendants and currently unknown officers were, at all times relevant hereto, acting under the color of law in their capacities as the City of Phoenix Police Department employees; their acts and omissions, were conducted within the scope of their official duties or employment.

47. The PPD Defendants, as the decision-makers for both PPD and the Tactical Response Unit (the PPD unit that responded to the May 31, 2020 protests) were aware of and authorized the PPD officers' use of force at the protests on May 31, 2020.

48. At the time of the complained-of events, the Fourth Amendment to the United States Constitution clearly established Plaintiffs' rights to be secure in their persons from unreasonable seizure through excessive force.

49. At the time of the complained-of events, any reasonable police officer would have known that the Constitution clearly establishes the right of American citizens to be secure in their persons from unreasonable seizure through excessive force.

50. Defendants' actions and use of force – including but not limited to their unnecessary deployment of tear gas, pepper balls, pepper-spray, mace, rubber-coated bullets, and beanbag rounds – were objectively unreasonable in light of the facts and circumstances confronting them and violated Plaintiffs' rights.

51. Defendants' actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiffs' federally protected rights.

52. Defendants engaged in the above-described conduct willfully, maliciously, in bad faith, with willful indifference to and in reckless disregard of Plaintiffs' federally protected constitutional rights, and with conscious awareness that they would cause

Plaintiffs to suffer physical, emotional, and psychological injuries.

53. Defendants' acts and/or omissions were moving forces behind Plaintiffs' injuries, causing them to experience physical injuries, physical pain, anxiety, humiliation, and/or emotional distress. And each of the Plaintiffs have incurred and will incur in the future, medical and related expenses, past and future lost earnings, loss of property, and/or compensatory, economic, consequential, special and general damages in an amount to be proven at trial.

54. Defendants are not entitled to qualified immunity for the conduct complained of in this Complaint because no reasonable officer could believe that the actions described in this lawsuit were objectively reasonable.

55. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

56. In addition to compensatory, economic, consequential and special damages, Plaintiffs are entitled to punitive damages against the individual Defendants under 42 U.S.C. § 1983, in that the actions of these Defendants were taken maliciously, willfully, or with a reckless disregard of Plaintiffs' constitutional rights.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Municipal Liability under *Monell*
### (Against City of Phoenix Only)

57. All other paragraphs of this lawsuit are incorporated.

58. Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected by the Constitution.

59. Such municipal liability exists when a city fails to properly train, supervise, or discipline its employees, amounting to a deliberate indifference to plaintiffs' constitutional rights.

60. The Phoenix Police Department has a custom or practice of unlawfully deploying chemical and kinetic weapons to illegally disperse and disrupt non-violent protests. In fact, over the past five years, PPD has been subject to multiple excessive force lawsuits, including an additional class action, brought by protesters.

61. The Phoenix Police Department has a custom or practice of unlawfully arresting and maliciously prosecuting protesters based upon their anti-police violence beliefs, or perceived anti-police violence beliefs. In fact, over the past five years, PPD has been subject to multiple lawsuits, brought by protesters claiming unlawful arrest and malicious prosecution.

*62.* The PPD Defendants, as the decision-makers for both PPD and the Tactical Response Unit (the PPD unit that responded to the May 31, 2020 protests) were aware of and authorized the PPD officers' plans to use indiscriminate force against protestors.

***Defendant City of Phoenix Ratified the Illegal Policies, Procedures, and Practices Utilized by PPD at the May 31, 2020 Protests***

63. The City of Phoenix has vested final decision-making authority in its Chief of Police, Defendant Jeri Williams, in the area of law enforcement and setting and implementing the policies and practices of the PPD, including but not limited to the development, implementation, and/or ratification of the PPD's procedures, policies, regulations, practices, and/or customs related to its use of force in response to political protests, the handling of large political protests, demonstrations, and marches, and the use of chemical and kinetic weapons against civilians.

64. On May 31, 2020, PPD officers engaged in an inordinate and indiscriminate use of force, unnecessarily injuring hundreds of people attempting to express their views, and they did not without provocation, justification, or warnings. Worse, the types of weapons used against non-violent demonstrators—largely chemical weapons—forced individuals to remove their masks and cough and sneeze on one another during a global

pandemic spread through respiratory droplets.

65. Immediately following this violent display of force and gross abuse of power, the procedures and violence used by PPD were ratified by Chief Williams who praised her officers' conduct during these protests and who refused to discipline any officers involved in these illegal activities.

66. Afterwards, the City awarded PPD with millions of dollars in overtime for responding to these protests.

67. These endorsements of police misconduct had the intended impact: PPD failed to change its behavior, and instead continued to unlawfully arrest and maliciously prosecute Black Lives Matter protesters.

68. In other words, the policies, patterns, practices, and/or customs of condoned misconduct are tacitly or overtly sanctioned by the City of Phoenix, as evidenced by the PPD's own history of similar misconduct; the conduct of the PPD Defendants both during and in the aftermath of May 31, 2020; the statements made by City leadership; and PPD's continued misconduct. These policies, patterns, practices, and/or customs, violate the constitutional rights of Plaintiffs and others in Plaintiffs' situation.

69. As a direct and proximate result of these actions and failures, Plaintiffs were injured and suffered damages in an amount to be proven at individual damages trials.

***As a Matter of Policy, Practice, and Custom, Defendant City of Phoenix and the PPD Defendants Failed to Adequately Train PPD Officers in Lawful Crowd Control Techniques***

70. The City of Phoenix has vested final decision-making authority in its Chief of Police, Defendant Jeri Williams, in the area of law enforcement and setting and implementing the policies and practices of the PPD, including but not limited to the development, implementation, and/or ratification of the PPD's procedures, policies, regulations, practices, and/or customs related to its use of force in response to political protests, the handling of large political protests, demonstrations, and marches, and the use

of chemical and kinetic weapons against civilians.

71. Defendant Williams and her delegated command staff, including the PPD Defendants in charge of supervising and/or managing the Tactical Response Unit, were aware that the unlawful use of dangerous weapons in violent and unlawful ways to break up peaceful associations and speech is a regular custom and practice of PPD personnel. Indeed, many Phoenix Police Officers – including members of the TRU – have been named in multiple lawsuits making similar claims.

72. Because of PPD's prior history of misconduct at protests, it was critical to take all steps necessary to ensure that official policy was changed and that officers were trained in a manner sufficient to address the well-known, constitutionally deficient practices and customs that violate individuals' First and Fourth Amendment rights.

73. Defendant City of Phoenix, Williams, and the PPD Defendants have known of the deficiencies in PPD policies and training since at least 2010. Despite the long history of unlawful PPD conduct at First Amendment assemblies and demonstrations, and the longstanding deficiencies in the training of PPD line and command staff on proper law enforcement conduct, the City failed to adequately train its officers and command staff prior to May 31, 2020 protests in the rights of demonstrators, lawful crowd control, dispersal orders, separating those engaged in lawful conduct from those engaged in unlawful conduct, the permissible use of "less-than-lethal" weapons during demonstrations, and the permissible use of force in such situations. This failure amounted to deliberate indifference to the rights of persons with whom PPD come into contact.

**FOURTH CLAIM FOR RELIEF**
**Gross Negligence**
**(Against Defendant City of Phoenix Only)**

74. All other paragraphs of this lawsuit are incorporated.

75. As set forth herein, all employees of the Defendant City of Phoenix owed Plaintiffs a duty of reasonable care with respect to their safety, physical health, and

Constitutional rights.

76. As set forth herein, employees of Defendant City of Phoenix failed to properly supervise and train currently unknown officers in the rights of demonstrators, lawful crowd control, dispersal orders, separating those engaged in lawful conduct from those engaged in unlawful conduct, the permissible use of "less-than-lethal" weapons during demonstrations, and the permissible use of force in such situations, prior to the May 31, 2020 protests.

77. The City of Phoenix employees in charge of supervising and/or managing the Tactical Response Unit, were aware that the unlawful use of dangerous weapons in violent and unlawful ways to break up peaceful associations and speech is a regular custom and practice of PPD personnel. Indeed, many of the PPD Defendants have been named in multiple lawsuits making similar claims.

78. Despite knowing the above, the City of Phoenix employees, including the PPD Defendants, failed to train and/or properly supervise currently unknown officers prior to May 31, 2020 protests, and this failure breached their duty of care of Plaintiffs.

79. As a direct and proximate cause of the City of Phoenix's breach of duty, Plaintiffs were injured and suffered other damages in an amount to be proven at individual damages trials.

80. As set forth above, all City of Phoenix employees, including the PPD Defendants, were acting in the course and scope of their employment as employees of the City of Phoenix, and the City of Phoenix is therefore vicariously liable for the damages caused by their tortious conduct.

**FIFTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
**(Against Defendant City of Phoenix Only)**

81. All other paragraphs of this lawsuit are incorporated.

82. As set forth above, employees of Defendant City of Phoenix, acting in the course and scope of their employment, engaged in a series of acts that an average member

of the community would regard as atrocious, intolerable in a civilized community, and beyond all possible bounds of decency. In particular, employees of Defendant City of Phoenix caused Plaintiffs to be trapped, corralled, and subject to indiscriminate, unnecessary, and excessive force for exercising their First Amendment rights – ultimately choosing to engage in mass arrests of hundreds of protestors, causing them to be detained for hours before being booked into jail during a global pandemic.

83. These employees of the City either personally participated in these activities, acted jointly or conspired with others who did so; authorized, acquiesced in, or set in motion policies, plans, or actions that led to the unlawful conduct; failed to take action to prevent such unlawful conduct; failed to maintain adequate training and supervision in deliberate indifference to Plaintiffs' rights; and ratified unlawful conduct that occurred by agents and officers under their direction, supervision, and control, including failing to take remedial or disciplinary action.

84. The aforementioned conduct was intentional insofar as it intended to cause Plaintiffs emotional distress (and discourage them from participating in protected First Amendment activities).

85. The aforementioned conduct was reckless because those engaging in that the employees of the Defendant City of Phoenix were aware of and consciously disregarded the near certainty that their actions would cause Plaintiffs emotional distress.

86. The aforementioned conduct did, indeed, cause Plaintiffs to suffer emotional distress.

87. As a direct and proximate result of these actions, Plaintiffs were injured and suffered damages in an amount to be proven at individual damages trials.

///

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court enter judgment against Defendants as follows:

a. For compensatory damages (general and special) in an amount to compensate Plaintiffs fully and fairly for the violations of their Constitutional Rights;

b. For general, consequential, special, and compensatory damages, including but not limited to their pain and suffering, mental anguish, emotional suffering, and loss of enjoyment of life;

c. For nominal damages as provided for by law;

d. For punitive damages in an amount sufficient to punish defendants and deter them from similar unconstitutional and unlawful conduct in the future;

e. For prejudgment interest on all liquidated sums;

f. For a permanent injunction prohibiting Defendants from using chemical and kinetic weapons and methods of "crowd-control" at protests;

g. For attorneys' fees under 42 U.S.C. §§ 1983 and 1988;

h. For Plaintiff's costs and other expenses incurred in this action; and

i. Such other and further relief as the Court deems just.

DATED this 1st day of June, 2021.

> THE PEOPLE'S LAW FIRM, PLC
> 645 North 4th Avenue, Suite A
> Phoenix, Arizona 85003
>
> By: /s/ Stephen D. Benedetto
>     Stephen D. Benedetto
>     Heather Hamel
>
> *Attorneys for Plaintiffs*